FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

05 JAN 24 PM 3:54

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

TAM SU,

                Plaintiff,

v.

ELECTRONIC ARTS, INC.,

                Defendant.

Civil Action No.

6O5CV131-ORL-19JGG

## COMPLAINT

### INTRODUCTION

1. As alleged more fully below, Defendant Electronic Arts, Inc. ("EA") has failed to pay overtime compensation to Plaintiff, Tam Su, a former EA employee, whose primary duty was to produce or install computer imagery designed by others for use in video games manufactured and sold by the Defendant.

2. Plaintiff brings this action to obtain statutory penalties, damages, and punitive damages.

### PARTIES

3. Plaintiff Tam Su is a resident of Emeryville, California.

4. Defendant Electronic Arts, Inc. ("EA") is a corporation organized under the laws of Delaware and is headquartered in Redwood City, California. EA operates studios to develop its entertainment software games, one of which is located in Maitland, Florida, (the "Tiburon Facility"), within this district.

5. Plaintiff was employed by the Defendant at the Tiburon Studio as an Associate Interface Artist from approximately September, 2002, until September, 2004.

6. EA develops, markets, publishes and distributes interactive entertainment software games that are playable by consumers on a variety of platforms such as home video game machines, personal computers, handheld game machines, and on-line systems over the internet.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction of this Complaint pursuant to 28 U.S.C. §1331 and 29 U.S.C. §216(b).

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because the Defendant EA owns and operates a studio here, and many of the wrongful acts complained of occurred in this district.

9. Defendant is engaged in interstate commerce.

## FACTUAL ALLEGATIONS

10. EA is a part of the motion picture, television and theatrical entertainment industry. It competes with companies such as Disney, Sony, Time Warner, Vivendi Universal, Lucas Films and others in the entertainment market. Its products include, among other things, video game versions of The Lord Of The Rings, James Bond, Harry Potter and many other popular films, as well as popular television shows such as Saturday morning cartoons or Star Trek.

11. Once EA makes a formal commitment to develop a video game, Producers work with Designers to create a production plan for the game, which includes a master design document that specifies the contents of the game, including game play, fiction, characters, and levels. Based in part on that master design document, a list of tasks to be done and a schedule under which such tasks are to be performed is completed.

12. EA employs Tools and Software Engineers to transform the ideas contained in the master design document into a game prototype.

13. Before the game software is created by the Engineers, EA also employs Concept Artists who create paintings and sketches to show how the images in the game will look. These illustrations are usually noncomputerized models for the computer-generated images that will later appear in the video game.

14. A variety of types of images appear in video games, including characters (human or other), objects of all kinds, special effects such as explosions, and general background and environment images, including light and shadow. An Art Production Manager and Art Directors oversee and direct the process by which each such image is created and incorporated into the video game.

15. EA employs persons whose primary duty is to create, copy, reproduce or install images designed by others into the actual video game, using commercial or in-house software computer programs. Such persons include Interface Artists.

16. An Art Production Manager, Art Directors and Producers closely supervise and direct Interface Artists in the performance of their duties, providing specific instructions and specifications with respect to minute details, such that the images are consistent with the overall design of the game and that the images will appear alongside each other appropriately. Art Directors (and in some cases, Producers or the Art Production Manager) routinely request that Interface Artists alter or refine images in order to make them fit more appropriately in the game.

17. For example, Art Directors (and, in some cases, Producers or the Art Production Manager) commonly perform "dailies" in which they literally stand over the shoulder of Interface Artists while they are working on an image and review the work to indicate what changes are

required to render the images satisfactory. These "dailies" occurred each morning and included four to five supervisory Producers and Art Directors. During periods where time is of the essence, the "dailies" could occur multiple times every day. Art Directors and Producers also regularly communicated specific email instructions and requests to Interface Artists concerning specific images.

18. Generally speaking, creative judgments with respect to images created, copied or reproduced by Interface Artists are made by Art Directors or — in some instances — by Producers or the Art Production Manager.

19. As an Interface Artist, Plaintiff dealt primarily with two-dimensional ("2D") images. Plaintiff would create, copy, reproduce, or install the 2D images with the use of tools-based software. At the direction of the Art Production Manager or Art Directors, Plaintiff would provide subtle motion to the 2D image within the computer environment to give the appearance of the image moving in some fashion, such as a button moving across the top of the screen, or a speedometer accelerating on a automobile console. Plaintiff would also provide color to the images in the manner directed by the Producer, the Art Directors, or the Art Production Manager.

20. The work of an Interface Artist requires the use of computers and Plaintiff is skilled in the use of computer software to produce, copy, and install images for use in computer games.

21. As an Interface Artist, Plaintiff did not have management responsibilities. He did not customarily and regularly direct the work of two or more other employees. Plaintiff did not have the authority to hire or fire other employees, and he was not responsible for making hiring and firing recommendations.

22. As an Interface Artist, Plaintiff did not have duties directly related to the creation or implementation of management policies, or to the general business operations of EA.

23. As an Interface Artist, Plaintiff did not require a license or certification from the state of Florida or any other governmental entity in order to perform his job.

24. As an Interface Artist, Plaintiff did not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study.

25. As an Interface Artist, Plaintiff did not perform work that is original and creative in character in a recognized field of artistic endeavor. As an Interface Artist, Plaintiff did not customarily and regularly exercise discretion and independent judgment. Rather, he followed strict instructions and specifications to create, copy, reproduce, install and give movement to imagery to be used in the video games, and relied on his general manual and intellectual ability and training with computers and certain software programs provided to him by EA in order to do so, following the instructions and specifications he was given by his supervisors.

26. As an Interface Artist, Plaintiff's work was not predominantly intellectual and varied in character. As an Interface Artist, Plaintiff neither chose what images to create, copy or reproduce, nor determined how or where those images should appear in the video game. Instead, he simply provided the images that were assigned to him in accordance with Defendant's instructions and specifications. An Art Production Manager and Art Directors supervised him closely to ensure timely production of each image assigned in conformity with EA's specifications and instructions.

27. As an Interface Artist, Plaintiff's job duties did not consist of the application of computer systems analysis techniques and procedures.

28. As an Interface Artist, Plaintiff's job duties did not require him to be highly skilled or proficient in the theoretical and practical application of highly specialized information to computer systems analysis, programming, or software engineering.

29. As an Interface Artist, Plaintiff's duties did not involve computer systems analysis or programming. Instead, his duties only required him to be skilled in the operation and use of computers and computer software to create, copy, reproduce, install or give movement to imagery for effects used in video games or entertainment software.

30. Plaintiff was salaried. He regularly worked more than eight hours a day and forty hours in a workweek. He worked on weekends and occasionally on national holidays and was not paid any overtime compensation for such work.

## COUNT I
### (Violation of the Fair Labor Standards Act, 29 U.S.C. §§207, et seq.)

31. Plaintiff hereby realleges and incorporates the allegations contained in paragraphs 1 through 30 above.

32. Annexed hereto as Exhibit 1 is a written consent to the filing of this Complaint duly executed by the Plaintiff pursuant to 29 U.S.C. §216(b).

33. Defendant was fully aware of the nature of the duties performed by the Plaintiff. Defendant also was aware that the duties of Plaintiff were inconsistent with exempt status, and that such persons were and are not exempt from the overtime provisions of the FLSA.

34. By its conduct, as set forth herein, the Defendant violated 29 U.S.C. §207(a) by failing to pay Plaintiff time and one-half his regular hourly rate for hours worked in excess of 40 hours during a workweek.

35. The Defendant's violations of 29 U.S.C. §207(a) were repeated, willful and intentional.

36. The Plaintiff has been damaged by said violations of 29 U.S.C. §207(a).

37.     Pursuant to 29 U.S.C. §207(a) and §216(b), Defendant is liable to the Plaintiff for the full amount of all his unpaid overtime compensation, plus an additional equal amount as liquidated damages, plus his attorneys' fees and costs.

## CLAIMS FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Determine the damages sustained by the Plaintiff a result of Defendant's violations of 29 U.S.C. §207(a), and award those damages against the Defendant and in favor of Plaintiff plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), and such prejudgment interest as may be allowed by law;

2. Award Plaintiff costs and disbursements of this suit, including, without limitation, reasonable attorneys', accountants' and experts' fees;

3. Grant Plaintiff such other and further relief as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

Submitted by his attorneys,

_____
Richard W. Smith
Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, PA
20 North Orange Avenue
P.O. Box 712
Orlando, FL 32802
(407) 843-2111

Thomas V. Urmy, Jr. (BBO #506620)
Todd S. Heyman (BBO #643804)
Lara Sutherlin (BBO #651267)
SHAPIRO HABER & URMY LLP
53 State Street
Boston, MA 02109
(617) 439-3939

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TAM SU,<br><br>             Plaintiff,<br><br>     v.<br><br>ELECTRONIC ARTS, INC.,<br><br>             Defendant. | Civil Action No. |

## CONSENT TO ACT AS PLAINTIFF

Pursuant to 29 U.S.C. §216(b), I consent to act as a plaintiff in this case.

Dated:  1/18/2005

_____
Tam Su